# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALADIN RUSHDAN,<br><br>       Plaintiff,<br><br>   v.<br><br>J. GONZALES, et al.,<br><br>       Defendants. | Case No. 1:14-cv-01807-DLB PC<br><br>ORDER FINDING CONGNIZABLE CLAIMS AND DISMISSING REMAINING CLAIMS AND DEFENDANTS |

Plaintiff Saladin Rushdan ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on November 17, 2014. The action was transferred to this Court on November 19, 2014. Pursuant to Court order, he filed a First Amended Complaint ("FAC") on May 4, 2015. Plaintiff names J. Gonzales, J. Arnett, T. Hood, Officer Casas, A. Guzman, T. Marsh, Sgt. Macias, M. Sexton and John Doe as Defendants.[1]

On October 28, 2015, the Court screened Plaintiff's FAC and found that it stated (1) an Eighth Amendment excessive force claim against Defendants Arnett, Hood, Guzman, Casas and Doe; and (2) a due process claim against Defendant Sexton. The Court ordered Plaintiff to either file an amended complaint, or notify the Court of his willingness to proceed only on these cognizable

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on January 15, 2015.

1

claims. On November 6, 2015, Plaintiff informed the Court that he was willing to proceed only on the cognizable claims.[2]

**A.    LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

---

[2] In his filing, Plaintiff asks why the Court did not address his claim of "unreasonable force" on page 15 of his FAC. The Court will address it in this order.

B.      **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Corcoran State Prison in Corcoran, California, where the events at issue occurred.

Sometime in June 2013, after Plaintiff arrived at Corcoran, he appeared before a Classification Committee and made it clear that he would refuse to be double-celled. Defendant Marsh, the 3A-Yard Lieutenant, therefore had knowledge of "the intended reaction of Plaintiff." ECF No. 11, at 16. Plaintiff contends that by signing off on the documents that were subsequently falsified, Defendant Marsh "lent tacit support to the other defendants." ECF No. 11, at 17.

On June 30, 2013, Plaintiff alleges that Defendants Arnett and Hood walked Plaintiff to see Defendant Gonzales, the yard sergeant who was directly responsible for ordering all events. Defendant Gonzales asked Plaintiff the same question over and over. Plaintiff stated, "I have an out of court settlement with CDC and I'm not supposed to be housed at Corcoran and I'm supposed to be single-cell status. Take me to the hole, I refuse to be double-celled." ECF No. 11, at 11-12. Defendant Gonzales then ordered Plaintiff to be placed in a double cell. Plaintiff tried to "resist peacefully by stopping," but Defendants Arnett and Hood bent his elbows above his head. ECF No. 11, at 12. Plaintiff contends that Defendant Gonzales was responsible for ordering the use of illegal force, and was responsible for Plaintiff's safety.

Defendant Guzman then walked up and asked Plaintiff what the problem was, and Plaintiff said he had repeated it over and over. Defendant Guzman told Plaintiff that he had not told him of a problem, so Plaintiff repeated that he had an out of court settlement. Defendant Guzman again asked Plaintiff if he had any safety concerns.

Plaintiff alleges that the hold by Defendants Arnett and Hood was excruciatingly painful and exacerbated various injuries. They "bodily carried" Plaintiff up a flight of stairs, and then tried to toss Plaintiff face first into cell #230 with another prisoner (Inmate Cain). ECF No. 11, at 12.

When Plaintiff tried to resist and break his fall by grabbing onto the cell door, Defendants Arnett, Hood, Guzman, Casas and Doe assaulted him on the orders of Defendant Gonzales. They began kicking and kneeing Plaintiff in an attempt to get him to double cell, and they laughed and

3

joked about it. ECF No. 11, at 12-13. Defendant Arnett then punched Plaintiff in the chest and knocked him onto his back. By the time Plaintiff got to his feet, Defendant Arnett "cowardly ran out of the cell and slammed the door." ECF No. 11, at 13. Plaintiff states that he was already restrained, handcuffed and in a secure holding area at the time force was used.

Plaintiff alleges that Defendant Marsh did not physically touch Plaintiff, but he was "present in the building during the attack and did nothing to stop it." ECF No. 11, at 17.

Plaintiff alleges that Defendant Casas was the "spark that ignited the entire situation." ECF No. 11, at 13-14. Defendants Casas and Doe handcuffed Plaintiff initially on June 30, 2013, and placed him in the locked shower area, which is often used as a holding cage. Plaintiff "peaceably" told Defendant Casas that he was refusing to double cell with Inmate Cain and he assumed that "standard procedure" after a refusal would be followed and he'd go to the hole. ECF No. 11, at 14. About fifteen minutes later, Defendant Casas returned and told Plaintiff, "Let's go!" While still handcuffed, Plaintiff turned towards the front door, assuming he was going to the hole. Instead, Defendants Casas and Doe tried to force Plaintiff up the stairs. Defendant Casas told Plaintiff that unless he had safety concerns, he was going into that cell. Plaintiff was shocked and "planted his feet and loudly proclaimed: 'I have an out of court settlement and I am not supposed to be housed at Corcoran period. An [sic] I'm supposed to be single-celled." ECF No. 11, at 14. Defendant Casas kept asking Plaintiff if he had safety concerns and Plaintiff responded with "the same answer each time." ECF No. 11, at 14. Defendant Casas again said, "Let's go," and then swung Plaintiff towards the wall, pushing his head and trying to smash his face into the wall. ECF No. 11, at 14. At the last moment, Plaintiff blocked the majority of the force with his foot and knee.

Prior to the assault, Plaintiff contends that he told Defendants that he was refusing to double-cell and why. Plaintiff states that after the assault, several Defendants were guilty of "threats and falsifying documentation." ECF No. 11, at 9. He contends that Defendants conspired to disavow the incident. Defendants never made a verbal or written report, and lied to make it appear as though Plaintiff requested protective custody.

Plaintiff argues that Defendants cannot say that they were just doing their job because they do not have a right to force an inmate to double-cell. If a prisoner refuses an order, guards can handcuff him. However, kicking and punching is not appropriate.

After the incident, Defendant Guzman asked Plaintiff to sign a statement indicating that he had safety and security concerns. Plaintiff refused, and told him "I thought you were a straight up man, you know I never made any statement like that. I'm not signing that." ECF No. 11, at 15. Plaintiff alleges that Defendant Guzman falsified the document and later added a false addendum. Plaintiff contends that these statements placed his life at risk, as Corcoran staff gave inmates access to other prisoners' reports and information. Plaintiff argues that this implicated a liberty interest in "maintaining truth, his reputation and continued daily existence." ECF No. 11, at 16. He believes that his medical condition and prior settlement places him "outside the normal operation of prison and in itself created a new liberty interest." ECF No. 11, at 16. He contends that attacking him and forcing him to double cell-with mentally ill prisoners, gang members or other prisoners involved in activities detrimental to his health was an atypical hardship.

Plaintiff further believes that placing him in a double cell creates an unreasonable risk to his health because it aggravates his medical condition. He alleges that he "exudes a malodorous smell from his infections" and had been single-celled in the past because of this. ECF No. 11, at 18. Plaintiff contends that he cannot get up at 2 a.m. to tend to his wounds without a substantial risk of fighting his cell mate. He also believes that he has a liberty interest in being single-celled.

Plaintiff also alleges that Defendant Macias attempted to intimidate him prior to his Classification Committee meeting in an attempt to "subvert justice." ECF No. 11, at 19. He believes that this was in retaliation for his charges of assault against Corcoran staff. Defendant Macias told Plaintiff that he would not be allowed to make "all sorts of accusations against Corcoran prison guards concerning their attack on him." ECF No. 11, at 19. Plaintiff contends that only a counselor can perform pre-interviews prior to classification, and that Defendant Macias, a sergeant, had no authority to do so. Plaintiff alleges that Defendant Macias was part of the conspiracy to hide the assault, and that she retaliated against him and violated his right to free speech.

5

Finally, Plaintiff alleges that Defendant Sexton, Chief Deputy Warden, was at his Classification Committee hearing. Defendant Sexton refused to allow Plaintiff to introduce pertinent case information so that he could respond to the false charges that he supposedly had safety and security concerns. He alleges that Defendant Sexton made himself part of the conspiracy to cover up the assault. Defendant Sexton also refused to hear any case factors relating to Plaintiff's medical needs. Plaintiff believes that his actions were retaliatory "for said guards to protect their lies." ECF No. 11, at 20.

Based on these allegations, Plaintiff alleges violations of the First, Fourth, Eighth and Fourteenth Amendments.

**C.   ANALYSIS**

   1.   Eighth Amendment- Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing *Hudson*, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

   a.   *Use of Force in Cell- Defendants Arnett, Hood, Guzman, Casas and Doe*

Plaintiff alleges that Defendants Arnett, Hood, Guzman, Casas and Doe kicked and kneed him while he was handcuffed, though admittedly trying to resist being placed into a double cell. At

6

the screening stage, and considering the number of Defendants allegedly involved, the Court finds that this states a claim against Defendants Arnett, Hood, Guzman, Casas and Doe.[3]

    b.  *Other Allegations of Use of Force*

      i.  Defendant Casas

Plaintiff contends that he was handcuffed by Defendants Casas and Doe after he refused to be double celled. He alleges that they tried to force him up the stairs, and Defendant Casas told him that unless he had a safety concern, he would be double celled. In response, Plaintiff "planted his feet and loudly proclaimed: 'I have an out of court settlement and I am not supposed to be housed at Corcoran period. An [sic] I'm supposed to be single-celled.'" ECF No. 11, at 14. Defendant Casas kept asking Plaintiff if he had safety concerns and Plaintiff kept responding with the same answer. Defendant Casas then swung Plaintiff towards the wall, pushing his head and trying to smash his face into the wall. At the last minute, Plaintiff blocked the majority of force with his foot and knee.

For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). Plaintiff again admits that he refused an order to double cell, and then resisted Defendant Casas' apparent attempts to move him after he was handcuffed. Plaintiff also contends that he "blocked" the majority of force. Under this scenario, which involves only one Defendant, the Court finds that this does not state a claim for relief.

      ii.  Defendant Guzman

Plaintiff alleges that Defendant Guzman approached him and asked what the problem was. Plaintiff again told him about the settlement, but Defendant Guzman asked if Plaintiff had any safety concerns. There is nothing about this encounter that suggests the use of any force.

---

[3] Plaintiff's claim that the "assault" was ordered by Defendant Gonzales will be discussed below.

7

### iii. Defendants Hood and Arnett

Plaintiff contends that Defendants Hood and Arnett walked him to see Defendant Gonzales. After Plaintiff spoke to Defendant Gonzales, Defendant Gonzales ordered Plaintiff to a double cell and Defendants Hood and Arnett began to take him back across the yard. Plaintiff admits that he tried to "resist peacefully by stopping," but Defendants Hood and Arnett bent his elbows above his head. ECF No. 11, at 12. Plaintiff contends that the arm hold was painful. Again, however, Plaintiff has admitted that he was resisting attempts to move him across the yard. Under this scenario, even though the arm hold may have caused pain, the facts do not suggest that Defendants Hood and Arnett used force maliciously and sadistically to cause harm. He therefore fails to state claim against them based on this incident.

### iv. Defendant Gonzales

Plaintiff contends that Defendant Gonzales ordered the assault. However, Plaintiff's allegations are based solely on speculation. Defendant Gonzales asked Plaintiff if he had any safety concerns and, despite Plaintiff's explanation about his prior settlement, ordered that he be taken to a double cell. These facts do no suggest, in any way, that Defendant Gonzales ordered that any action be taken against Plaintiff other than his placement in a double cell.

Plaintiff therefore fails to state a claim against Defendant Gonzales for the use of excessive force.

### v. Defendant Marsh

Plaintiff makes a vague allegation that Defendant Marsh was in the building during the attack, but failed to stop it. While a failure to protect can support an Eighth Amendment claim, Plaintiff's allegations are insufficient to do so here.

The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Here, Plaintiff simply states that Defendant Marsh was "present in the building" during the attack, but this does not establish that Defendant Marsh knew of the attack, or had a reasonable opportunity to prevent the attack.

Plaintiff therefore fails to state a claim against Defendant Marsh.

### 2. Eighth Amendment- Deliberate Indifference

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff's claim of deliberate indifference appears to be based on his contention that forcing him to double-cell will cause future harm to his health. However, Plaintiff cannot base a claim on a future event, which may or may not happen. Such allegations are speculative and do not support a claim for relief.

### 3. Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. Id.

9

a. *False Documentation*

The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement and an independent right to an accurate prison record, grounded in the Due Process Clause, has not been recognized. Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987). Under state law, liberty interests created by prison regulations are limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, and Plaintiff's allegations concerning his prison record do not support a claim for relief. Wilkinson, 545 U.S. at 221 (citing Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)) (quotation marks omitted).

Plaintiff argues that the documents placed his life in danger because Corcoran staff gave inmates access to prisoners' information. He also suggests that he had a liberty interest in "maintaining truth, his reputation and continued daily existence." ECF No. 11, at 16. Plaintiff does not support this with any facts, however, and there is no indication that this constitutes an atypical hardship. He therefore fails to state a claim against Defendants Marsh and Guzman based on falsification of documents.

Plaintiff also suggests that his medical condition would make it an atypical hardship to place him in a double cell, and that he has a liberty interest in being single-celled. Contrary to his belief, he has no liberty interest in single cell housing, regardless of his medical conditions.

This claim cannot be cured by amendment.

b. *Classification Hearing*

With respect to placement in administrative segregation, due process requires only that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons for considering segregation, and allow the prisoner to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (quotation marks omitted), abrogated in part on other grounds, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995); accord Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003).

Prisoners are not entitled to detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation. Toussaint, 801 F.2d at 1100-01 (quotation marks omitted). Further, due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation. Id. (quotation marks omitted).

Plaintiff complains of a denial of due process in connection with a classification hearing. Specifically, he contends that Defendant Macias attempted to intimidate him prior to the hearing and dictate what Plaintiff could or could not say. He also alleges that Defendant Macias did so using a "pre-inquisition style" interview, which is not provided for in CDCR policy. That Defendant Macias may have intimidated him, or tried to tell him that he could not make certain allegations, however, does not violate the Due Process Clause. Based on Plaintiff's allegations, Defendant Sexton, not Defendant Macias, prevented Plaintiff from defending against the charges at the hearing.

In that regard, Plaintiff contends that Defendant Sexton refused to allow him to defend himself "by responding to the 'false charge' that Plaintiff supposedly said he had safety concerns." ECF No. 11, at 20. Defendant Sexton also refused to hear about Plaintiff's medical needs. As explained above, the Due Process Clause requires that Plaintiff be permitted to present his views, and this would include Plaintiff's refutation of the reason why he was being placed in Ad-Seg. Plaintiff therefore states a due process claim against Defendant Sexton.

4. First Amendment

   a. *Retaliation*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

11

reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Plaintiff alleges that Defendant Macias tried to intimidate him prior to his Classification Hearing in retaliation for filing a complaint against Corcoran staff. Even assuming that telling Plaintiff that he cannot "make all sorts of accusations against Corcoran staff concerning their attack" is adverse action, he speculates that she did this because of his complaint. Moreover, there is no indication that any of his First Amendment rights were chilled because of her alleged intimidation. Plaintiff's alleged issues at the hearing are related to Defendant Sexton, not Defendant Macias. Plaintiff therefore fails to state a retaliation claim against her.

Turning to Defendant Sexton, Plaintiff believes that he retaliated against him by not permitting him to discuss certain issues at his Classification Committee hearing. Other than citing his own belief, however, Plaintiff does not provide any facts to support a finding that Defendant Sexton's actions were taken *because of* Plaintiff's grievance. He therefore fails to state a retaliation claim against Defendant Sexton.

   b. *Freedom of Speech*

The free speech standard is diminished in prisons, as compared to the nation at large, because it must yield to the need for creating a climate of consistency and control. Shaw v. Murphy, 532 U.S. 223, 229 (2001). Thus, "an inmate retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir.2001) (quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977)) (internal quotation marks omitted). The question is whether officials' disciplinary decisions were commiserate with their authority to control the prison climate.

Plaintiff's claim is vague, but appears to be related to his contention that he was not permitted to speak on certain issues at his Classification Committee hearing. Given the deference afforded to prison authorities, and the fact that this claim is cognizable under the Due Process clause,

the Court will not find a right to freedom of speech during a classification hearing. This claim cannot be cured by amendment.

### 5. Fourth Amendment

Plaintiff's Fourth Amendment claim is based the same set of facts that underlie his Eighth Amendment excessive force claim. However, the Fourth Amendment's prohibition against excessive force applies to non-prisoners, i.e., individuals during an arrest. When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002)

Plaintiff therefore fails to state a claim under the Fourth Amendment.

### 6. Conspiracy

Insofar as Plaintiff alleges a general conspiracy, he fails to adequately allege the existence of a conspiracy. In the context of conspiracy claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy, i.e., the existence of an agreement or a meeting of the minds, between Defendants. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). He therefore fails to state a conspiracy claim.

///
///
///
///
///
///

**D.    CONCLUSION AND ORDER**

This action shall proceed on the following claims: (1) an Eighth Amendment excessive force claim against Defendants Arnett, Hood, Guzman, Casas and Doe; and (2) a due process claim against Defendant Sexton.  All remaining claims and Defendants Gonzales, Macias and Marsh are DISMISSED from this action for failure to state a claim.

IT IS SO ORDERED.

Dated:   **November 10, 2015**            /s/ *Dennis L. Beck*
                                                                        UNITED STATES MAGISTRATE JUDGE